**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHAWN C. MCGUIRE, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 26-5189** |
| | : | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.** | : | |

# MEMORANDUM

**KEARNEY, J.** **September 14, 2026**

A consumer agreed to arbitrate disputes on the accuracy of information in his consumer credit report prepared by credit reporter Experian Information Solutions, Inc. So, when disappointed with the Experian's response to his dispute concerning a mortgage he claimed to be a result of identity theft, the consumer challenged the mortgage entry on his consumer credit report through a mandated arbitration. The consumer specifically challenged Experian's lack of investigation into the veracity of the mortgage holder's verified information. The arbitrator reviewed these specific arguments with related documents, as well as all the record, and found Experian did not violate its reinvestigation obligations set by Congress under the Fair Credit Reporting Act. The consumer is now disappointed with the arbitrator's decision rejecting his contentions. He asks us to vacate the arbitrator's award arguing the arbitrator did not address Experian's undisputed obligations to verify the existence of the debt. But the arbitrator expressly did so. The arbitrator found Experian relied upon verifications and public documents to confirm the disputed mortgage obligation. The arbitrator found Experian did not violate its reinvestigation duties set by Congress. We studied the record as well. We find no basis to vacate the May 20, 2026 arbitration award in favor of Experian. We enter judgment in favor of Experian.

## I. Background facts found by the arbitrator or in the public record.

Shawn C. McGuire, Jr. provided a first mortgage in 2018 and a second mortgage in 2019 to the same lender.[1] Mr. McGuire claims the lender discharged the first mortgage as satisfied and assigned the second mortgage to another creditor which appears to be PennyMac.[2] The new creditor PennyMac continued to report the first mortgage as not discharged.[3]

***Mr. McGuire disputed the line entry based on identity thefts.***

Mr. McGuire submitted a dispute to the Consumer and Financial Protection Bureau alleging a dozen accounts reported by Experian Information Solutions, Inc. resulted from identity theft and must be blocked. Mr. McGuire included a Federal Trade Commission Identity Theft Report.[4] Experian responded by blocking the 2019 mortgage entry and other accounts from his credit file.[5]

Experian then learned the creditor PennyMac on the 2019 mortgage issued a recission request showing it possessed signed original documents proving the disputed second mortgage pertained to Mr. McGuire and not the result of identity theft.[6] Experian lifted its block of the 2019 mortgage entry on the consumer report and told Mr. McGuire of its decision.[7] Mr. McGuire then filed another dispute of the 2019 second mortgage entry based upon identity theft. [8]

Experian treated Mr. McGuire's dispute as related to the accuracy of his consumer credit report and not as a claim of identity theft.[9] Experian told the underlying creditor PennyMac Mr. McGuire disputed the accuracy of the creditor's information requiring PennyMac conduct an investigation and report back to Experian.[10] The creditor completed the investigation leading to a verified response confirming the accuracy of the disputed entry.[11] Experian notified Mr. McGuire of its intent to continue to include the creditor PennyMac's information about the disputed

mortgage account in his credit report.[12] Experian included information in the credit file about the 2019 mortgage such as the date opened, credit limit, and original amount.[13]

***Mr. McGuire challenged the Experian reporting through arbitration.***

Mr. McGuire sought arbitration under the Federal Arbitration Act challenging Experian's obligations to more fully study its challenged trade line on the second mortgage (apparently then held by Penny Mac) is accurate and seeking 2.5 million dollars in damages.[14] He claimed the lender satisfied the first mortgage and a later trade line appeared on his Experian credit report as a delinquent loan with foreclosure status in late 2025.[15] He took several steps including notifying Experian.[16] Experian completed an investigation finding it should publish the trade line as accurate relying upon the information as to Mr. McGuire's challenge on identity theft.[17]

Mr. McGuire then sued Experian in arbitration for not providing him an adequate response, verifying the trade line without adequate documents, lacking adequate evidence concerning the existence of the trade line, and a variety of other claims.[18] He focused his arguments challenging the creditor PennyMac for not producing underlying information under Pennsylvania law and argued this inadequacy should have advised Experian of PennyMac being an unreliable source and its reliance would be unreasonable under the Fair Credit Reporting Act.[19]

Experian addressed Mr. McGuire's concern regarding the ability of the arbitrator to disregard Experian's finding of PennyMac as a reliable source.[20] Mr. McGuire countered arguing the arbitrator should draw a distinction between the existence of a document and data verification.[21] He argued PennyMac provided insufficient certification and Experian must still identify background records to fulfill its obligation of reasonable investigation.[22] He asked the arbitrator to reject Experian's position.[23] But he also asked the arbitrator to proceed on the record

presented including his theory Experian improperly relied on faulty information provided by the creditor PennyMac.[24]

The arbitrator issued a final written award on May 20, 2026.[25] The arbitrator confirmed his review of Mr. McGuire's argument Experian should have done more and Experian should have sought documents relating to or underlying the 2019 mortgage before completing its own investigation because of PennyMac's inadequate document production.[26] The arbitrator specifically identified Mr. McGuire's concerns about (1) specific documents which would have shown a lack of reasonableness; and (2) would show Experian's reliance on PennyMac did not discharge Experian's obligations under the Fair Credit Reporting Act. [27]

The arbitrator rejected these presented arguments.[28] The arbitrator found Experian's initial reporting to be accurate, Experian honored the original identity theft block request, thereafter rescinded the identity theft block request, then conducted a reasonable investigation under the Act and Experian could rely upon a verification of notarized public records, assignment records and contradictory evidence submitted by Mr. McGuire.[29] The arbitrator denied Mr. McGuire's claims in their entirety confirming a final award and full settlement of all claims including those relating to the reasonableness of Experian's investigation into the background of information PennyMac provided.[30] The arbitrator specifically found all claims not expressly made are denied.[31]

Mr. McGuire did not stop. He brought this case pro se in state court petitioning to vacate the arbitration award.[32] He argues the arbitrator refused to hear, failed to consider or failed to give effect to evidence he believes to be material to the controversy concerning Experian's reliance upon PennyMac's information.[33] He further argues the arbitrator exceeded his powers depriving him the ability to issue a final and definite award.[34] Mr. McGuire now argues the arbitrator resolved the mortgage existence or furniture verification dispute rather than Mr. McGuire's challenge to the

reliability of the sources provided to Experian and on some type of reasonable investigation theory.[35]

## II. Analysis

We are not persuaded by Mr. McGuire's attempt to turn the quality of Experian's investigation challenge fully presented to the arbitrator into a claim here under the Federal Arbitration Act. Mr. McGuire agreed to arbitrate his disputes.[36] Congress sets the rules.[37] There are very narrow grounds to vacate an arbitrator's award.[38] We do not correct factually the orders or substitute our judgment for the arbitrator's judgment.[39]

Congress permits us to vacate an award when an arbitrator is guilty of misconduct in refusing to hear evidence pertinent and material to the controversy or engaging in behavior that prejudices a party's rights.[40] This test does not allow us to reweigh evidence or impose our own judgment.[41] Congress has left the balancing of evidence to the arbitrator. We may also vacate under the Act where an arbitrator so exceeds his powers or imperfectly executes them so as to find he did not make a mutual final and definite award on the subject matter.[42] For example if the arbitrator decides an issue not submitted, grants relief not rationally derived from the parties' agreement or submissions, or issues an award so irrational as it lacks support.[43]

### A. We find no basis to vacate based on a procedural error.

We turn first to whether an alleged procedural error requires us to vacate the award. Mr. McGuire is wrong factually based upon the record. But even if he has a dispute with the factual record, he may not bring it here as there is no basis to challenge the arbitrator's decision process. Mr. McGuire does not identify an evidentiary refusal or preclusionary ruling. He does not show an exhibit, precluded testimony, or request to submit denied by the arbitrator. Mr. McGuire, to the contrary, presented every theory including the ones he presents today. He specifically raised this

issue concerning the reliability of the information submitted by PennyMac to Experian before the arbitrator on his April 27, 2026 supplemental submission.[44] Experian responded to this charge.[45] Mr. McGuire then countered to challenge Experian's "reframing" of the issue and to again repeat his distinction between data verification (his claim) as opposed to document existence.[46]

Mr. McGuire may not like the arbitrator's focus. But he cannot argue the arbitrator did not review a complete record. Mr. McGuire told the arbitrator to proceed on the record already presented.[47] He waived oral hearings.[48] The arbitrator then specifically addressed Mr. McGuire's concerns including arguing Experian should have sought an accounting or life of loan history, proof of consideration, refinance documentation, payoff records, origination documents, collateral listing, chain of title materials and related records.[49] The arbitrator described seeing these arguments.[50] The arbitrator then found Experian conducted a reasonable investigation and could rely on the verification and other evidence it gathered.[51] Mr. McGuire disagrees with this finding.[52] But disagreement is not procedural error warranting we vacate the May 20, 2026 award. The arbitrator reviewed everything before him.

**B. We find no basis to vacate based on the Arbitrator allegedly deciding the wrong issue.**

Mr. McGuire alternatively asks to vacate the May 20, 2026 award because the arbitrator decided a furnisher verification controversy rather than his argument about the reliability of the sources and materials as part of Experian's reinvestigation.[53] Mr. McGuire believes Experian could have done better.[54] The arbitrator disagreed.[55] The arbitrator identified the omission at the center of Mr. McGuire's claims.[56] The arbitrator specifically identified each document Mr. McGuire sought to have Experian review.[57] The arbitrator rejected this argument.[58]

The arbitrator further addressed Mr. McGuire's placing of weight upon those records he believes Experian should have reviewed.[59] The arbitrator noted Mr. McGuire's argument of

Experian's reliance upon PennyMac did not satisfy its obligations.[60] The arbitrator disagrees.[61] The arbitrator found Experian conducted a reasonable reinvestigation and could rely on furnisher verification, notarized public records, assignment records, and contradictory evidence submitted by petitioner.[62] The arbitrator answered the question Mr. McGuire claims is unanswered.

Mr. McGuire does not like the way the arbitrator decided the question before him nor the way Experian completed its investigation. The arbitrator fully described the question before him as presented by Mr. McGuire in two separate filings.[63] He found Experian did not violate the Act in its reinvestigation.[64] He decided all issues on the submitted record. We find no basis to vacate.

**C. We grant Experian's cross motion and confirm the award.**

Experian asks we confirm the May 20, 2026 award as a written, final, and definite decision.[65] The award resolves the claims submitted.[66] It denies all claims in their entirety.[67] We studied each of the specific grounds raised by Mr. McGuire and find no basis in his contention.

We today confirm the award and enter judgment in Experian's favor.

## III. Conclusion

Mr. McGuire challenges the arbitrator's award rejecting his fully-expressed arguments concerning Experian's inadequate reinvestigation by relying upon PennyMac's information. He made these arguments to the arbitrator. Mr. McGuire did not ask for further discovery or oral hearings. He agreed to rely upon his record including his specific arguments challenging PennyMac's investigations and Experian's reliance upon PennyMac's verified information and related documents. The arbitrator cited the information which he relied on denying Mr. McGuire's challenges. Mr. McGuire offers no basis to vacate the May 20, 2026 award.

We enter judgment in favor of Experian consistent with the May 20, 2026 award.

---

[1] ECF 1-1 at 24.

[2] *Id*. Mr. McGuire proceeds pro se. We discern PennyMac as the furnishing mortgage reporter from the accompanying records.

[3] *Id*.

[4] *Id*.

[5] *Id*.

[6] *Id*.

[7] *Id*. at 24–25.

[8] *Id*. at 25.

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] *Id*.

[13] *Id*.

[14] ECF 9-7 at 3.

[15] *Id*. at 4.

[16] *Id*.

[17] *Id*.

[18] *Id*. at 6.

[19] ECF 9-7 at 6–7; ECF 9-2 at 3.

[20] ECF 9-2 at 3.

[21] *Id*.

[22] *Id*.

[23] *Id*. at 3–4.

[24] *Id*.

---

[25] *Id*. at 4.

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 4–5.

[31] *Id*. at 5.

[32] ECF 1-1 at 2. Experian timely removed here invoking our diversity jurisdiction. ECF 1.

[33] ECF 1-1 at 3, 5.

[34] *Id*. at 5.

[35] *Id*.

[36] ECF 1-1 at 24.

[37] 9 U.S.C § 10(a).

[38] *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *aff'd*, 569 U.S. 564 (2013) (citing 9 U.S.C. § 10(a)).

[39] *Id.*

[40] 9 U.S.C § 10(a)(3); *Whitehead v. Pullman Group, LLC*, 811 F.3d 116, 120 (3d Cir. 2016).

[41] *Major League Umpires Ass'n v. American League of Professional Baseball Clubs*, 357 F.3d 272, 279-80 (3d Cir. 2004).

[42] 9 U.S.C § 10(a)(4); *Major League Umpires Ass'n,* 357 F.3d at 279.

[43] *Sutter*, 675 F.3d at 219.

[44] ECF 1-1 at 20–21.

[45] *Id.* at 14–18.

[46] *Id.* at 11–13.

---

47 *Id.* at 13.

48 *Id.*

49 ECF 1-1 at 25.

50 *Id.* at 24–25.

51 *Id.* at 25.

52 *Id*. at 2.

53 *Id*. at 1, 4–5.

54 ECF 6-3 at 1.

55 ECF 1-1 at 25.

56 *Id.* at 24–25.

57 *Id.*

58 *Id.* at 25.

59 *Id.*

60 *Id.*

61 *Id.*

62 *Id.*

63 *Id.* at 2–4.

64 *Id.* at 3.

65 ECF 9-2 at 13.

66 ECF 1-1 at 25.

67 *Id.*